Whaley, Chief Justice,
delivered the opinion of the court:
Plaintiff is.seeking to recover the rental value of certain spaces in the building owned by it and which spaces were used and occupied by a section of the Works Progress Administration and by-the National Youth Administration.
■ ■ The Fourth Pennsylvania District of the Federal Works Progress Administration had been located by the Director of that- district on the twenty-third floor of the Architects Building in the city of Philadelphia, This space was under lease to the firm of Bankin & Kellogg. In the latter part of *377 August, 1935, the Filth Pennsylvania District of the Worts Progress Administration was consolidated with the Fourth Pennsylvania District and, as a result of this consolidation, additional space was necessary to accommodate the Fifth District in the same building in which the Fourth District was located.
The Works Progress Administration, through the office of its District Director negotiated for the additional space. The rental agent for the District Director’s office and the rental agent for the State Director’s office negotiated with the rental agent of the Architects Building Corporation for the additional space. The rental agent for the Architects Building knew that the Director of the Fourth Pennsylvania District was the superior of the rental agent of the District Director’s Office but no discussion was had with the Director about the rental of the space.
The Director of the Fourth District, Nankin, was the President of the Architects Building Corporation which owned the building; he was a member of its Board of Directors and a stockholder through his copartnership holdings. However, he took no part in submitting the bid for space in the building. There were five other bids but the offer of the Architects Building Corporation at $1.04 per square foot was the lowest. As a result of the negotiations the Works Progress Administration on September 10, 1935 entered into possession and used 6,387 square feet of space in addition to the twenty-third floor which was then leased to Kankin & Kellogg. Clearance was obtained by the State Director of the United States Procurement Office for the space occupied by the Works Progress Ad.ministration and subsequently the lease agreement was prepared on a United States Government Standard Form covering the entire space in the Architects Building including the twenty-third floor. The Architects Building Corporation declined to sign this lease because it included the twenty-third floor which space was then under lease to Rankin & Kellogg.
Subsequently it was decided to move the offices of the Works Progress Administration to the Manufacturers Exchange Building and on April 18, 1936, the space in *378 the Architects Building occupied by the Works Progress Administration was vacated except the 1,820 square feet which was occupied and used by the National Youth Administration. This space was used by the National Youth Administration from April .19, 1936 until August 31, 1936, on which date it was vacated. On October 26, 1936, the Pennsylvania State procurement officer executed a lease for the space occupied by the National Youth Administration from April 19, 1936, to August 31, 1936, at a rental price of $688.75. This was the only lease that was ever executed by the Works Progress Administration for the space occupied by it in the plaintiff’s building.
The negotiations for the lease were conducted by the State Director of the National Youth Administration. Rankin, in his official position as- President of the Corporation, or as Director of the Fourth District of the Works Progress Administration, had nothing to do with the negotiations and the entering into of the lease. The defendant never paid anything for the additional space occupied by the Works Progress Administration or for the space occupied by the National Youth Administration, and this suit is brought to recover the reasonable value for the occupancy of this additional space necessary to accommodate the Works Progress Administration and the National Youth Administration.
The defendant has received the benefit of the use of plaintiff’s property and under ordinary circumstances should pay for it. The general rule is, and has been consistently followed since Clark v. United States, 95 U. S. 539, 543, that where a parol contract has been fully executed by a contractor, wherein the United States receives all the benefits of the undertaking, the contractor is entitled to recover such value as upon an implied contract.
The defendant sets up the defense that plaintiff is not entitled to recover for the reason that Rankin, who was the Director of the Fourth and Fifth Consolidated Pennsylvania Districts of the Works Progress Administration, was also President of the Architects Building Corporation and a member of the Board of Directors and his firm was a stockholder *379 in the corporation, and, therefore, the act of March 4, 1909, 35 Stat. 1097, Title 18, Ch. 4, Sec. 93, U. S. C. A. applies^ '■
This statute makes it a criminal offense, subject to finé and imprisonment, for any officer of a corporation or member or agent of a firm, directly or indirectly interested in the pecuniary profits of the corporation or firm, to act as an officer or agent of the United States in the transaction of any business with such corporation dr firm. As this is a prohibitive statute no contractual rights can accrue through the act of an officer of a corporation or firm who also acts for the United. States.
The instant case is different in many respects from the.case of John H. Rankin, Sole Surviving and Liquidating Member of the Partnership Firm of Rankin & Kellogg v. The United States, No. 45200, decided this date, ante, p. 357 in which we held that it was unlawful for an officer of the Government to act with himself and therefore no contractual right could accrue.
The negotiations in the instant case for the additional space were conducted by the rental agent of the Director’s Office and the rental agent of the Architects Building Corporation. Eankin had nothing to do with these negotiations, The only connection he might have had with the matter .was the signing of a lease as President of the Corporation of the confirmation, of a lease by the Board of Directors of which he was only one member, if a lease had been executed. . No lease was executed. His connection was so slight and minor that we do not think the interests of the Government could in any way have been affected.
The rental price was fair and reasonable. The space was necessary to accommodate the consolidated districts and the mere fact that the Director of the Districts happened to.’be the President of the Corporation and a member of its Btíard of Directors should not, and does not, we think, preclude recovery. Eankin received no pecuniary benefit and derived no advantage either directly or indirectly. ■ . „
This case is controlled by the case of United States v. Chemical Foundation, 272 U. S. 1, 18, in which the Supreme Court held, in commenting upon the effect of section. 41. of the Criminal Code, as follows: : "
*380 * * * It lays down a general rule for the protect tion of the United States in transactions between it and corporations and to prevent its action from being influenced by anyone interested adversely to it. It is a penal statute and is not to be extended to cases not clearly within its terms or to those exceptional to its spirit and purpose. * * *
We believe this is one of the exceptions to the general rule. It was not the intention of the statute to cover a case of the nature of the instant case where the action of the President Of the Corporation, who happened to be an agent of the Government, was solely for the purpose of officially signing the lease' or voting on its acceptance, and where he took no part ill the negotiations and derived no benefit, his actions being purely ministerial and in no way detrimental to the interests of the United States and transcended no public policy.
, The additional space occupied by the National Youth Administration from April 19, 1936, to August 31,1936, was signally free from any possible taint or color of undue influence, and plaintiff is entitled to recover for the use of this space.
In our judgment, plaintiff is entitled to recover for the entire additional space in the Architects Building which was occupied by the Works Progress Administration from September 10,1935, to April 18,1936, in the sum of $5,672.97, and for the space occupied by the National Youth Administration from April 19,1936, to August 31,1936, in the sum of $688.75.
Plaintiff is entitled to recover $6,361.72.
It is so ordered.
JONES, Judge; and LittletoN, Judge, concur.